**WO**

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Meadowlark Lemon, a married man,<br><br>Plaintiff,<br><br>v.<br><br>Harlem Globetrotters International, Inc., an Arizona corporation; et al.,<br><br>Defendants. | No. CV 04-0299 PHX DGC and<br>CV 04-1023 PHX DGC<br><br>**ORDER** |

The parties have filed various motions in limine and motions to strike. The Court's rulings on those motions will be set forth below.

**IT IS ORDERED:**

1. Defendants' Joint In Limine Motion to Exclude Any Evidence of Sales Allegedly Violating Plaintiffs' Rights Other Than as Expressly Set Out in the June 27, 2006 Order (Dkt. #461) is **granted in part and denied in part**. The motion is granted to the extent it seeks to prevent Plaintiffs from claiming damages in excess of the amounts set forth in the HGI Letter and Sales Chart (Phipps I). The Court's reasoning on this issue is set forth in the Court's order dated December 5, 2006. Dkt. #559. Defendants' motion is denied to the extent it seeks to prevent Plaintiffs from using any sales other than those set forth in the HGI Letter or Sales Chart (Phipps I). Although such sales may not be admitted to prove damages, evidence of additional sales may be relevant to other portions of Plaintiffs' claim such as the need to prove that the Plaintiffs' names or likenesses were appropriated to the Defendants'

advantage. *See Lemon v. Harlem Globetrotters Int'l, Inc.*, 437 F.Supp.2d 1089, 1100 (D. Ariz. 2006). Because the Court cannot determine the relevancy of such evidence at this time, Defendants' motion will be denied. The Court will rule on relevancy objections at trial.[1]

2. Defendant GTFM, LLC's In Limine Motion to Exclude Any Allegations of Discovery Abuses by GTFM, LLC (Dkt. #464) is **granted**. GTFM asks the Court to prevent Plaintiffs from introducing evidence of alleged discovery abuses. In response, Plaintiffs assert that Defendants repeatedly failed to provide requested discovery. In support of this assertion, Plaintiffs cite their third request for production of documents, which was served on August 18, 2005. Dkt. #524 at 2. This request was served some 18 months after the lawsuit was filed, some 16 months after the Court's Case Management Order (Dkt. #26), and only six weeks before the discovery deadline (Dkt. #114). Plaintiffs also cite the Blenden deposition, but do not identify the date on which it was taken. The Court suspects that this deposition was also taken near the close of discovery. The Court's original Case Management Order made clear that the parties should contact the Court if discovery disputes arose. Dkt. #26, ¶ 6. The order specifically stated that "[a]bsent extraordinary circumstances, the Court will not entertain fact discovery disputes after the deadline for completion of fact discovery, and will not entertain expert discovery disputes after the deadline for completion of expert discovery." *Id.* ¶ 6(c). The Court also advised the parties that the deadlines were real and that the Court intended to enforce them. *Id.* ¶ 10. Despite these warnings, Plaintiffs never raised discovery disputes with the Court. The Court therefore was never able to address the concerns Plaintiffs now raise about alleged non-responsiveness on the part of Defendant. Having failed to raise

---

[1] The Court notes that Defendants' motion (Dkt. #461), and many other of Defendants' filings addressed in this order, violated the Court's three-page limitation on motions in limine. *See* Dkt. #436 ¶ 7. The Court also notes that Plaintiffs' briefing on motions in limine repeatedly violated the Court's local rule on font size, LRCiv 7.1(b)(1), as did footnotes in Defendants' briefs. The parties are admonished to follow the Court's orders and rules more closely.

these issues in a timely manner, and to obtain the Court's rulings when deficiencies could have been addressed and resolved, Plaintiffs will not be permitted to assert these disputes as evidence at trial.

Plaintiffs contend that Defendants' alleged discovery abuses are relevant to the adequacy of Plaintiffs' damages calculations and punitive damages. As the Court has noted in other orders, however, Plaintiffs had ample time to conduct discovery in this case and to resolve any discovery issues needed for their expert report. Dkt. #143, 148, 559.

Moreover, evidence submitted in support of punitive damages generally must concern events that occurred at the time of the alleged wrongful activities. Defendants' alleged wrongful appropriations of Plaintiffs' personas occurred in 2002-2004; the alleged discovery abuses occurred in 2005. "[A]cts of the wrongdoer occurring after the liability-creating event are normally not material on the issue of punitive damages unless such acts constitute evidence as to either the manner in which the liability-creating event occurred or to the aggravation of the victim's injuries." *Forquer v. Pinal County*, 526 P.2d 1064, 1067 (Ariz. Ct. App. 1987); *see also Saucedo v. The Salvation Army*, 24 P.3d 1274, ¶¶13, 12, 13 (Ariz. Ct. App. 2001). Evidence of concealment may in some cases be relevant to punitive damages, *see Hawkins v. Allstate Ins. Co.*, 733 P.2d 1073, 1080 (Ariz. 1987), but, as noted above, Plaintiffs delayed critical discovery until the end of the discovery period and did not raise discovery disputes in a timely manner or in accordance with the Court's procedures. As a result, Plaintiffs' never obtained the Court's assistance or rulings on matters directly within its control – the conduct of the parties during discovery in this case – and therefore failed to obtain any determination of the Court that Defendants concealed relevant evidence. Plaintiffs cite *Asphalt Engineers, Inc. v. Galusha*, 770 P.2d 1180 (Ariz. Ct. App. 1989), for the proposition that discovery abuses may be relevant to punitive damages, but the Court in *Asphalt Engineers* held that the defendant's false statements during discovery, including his deposition, were relevant to punitive damages. The Court did not hold that the defendant's failure to respond to discovery

requests was relevant to punitive damages. The Court holds that evidence of Defendants' alleged discovery abuses may not be introduced at trial or mentioned to the jury. Plaintiffs had ample time to complete discovery and to obtain the Court's assistance in resolving discovery disputes. Having failed to do so, Plaintiffs may not now turn this case into a trial of whether Defendants' discovery responses were proper.

       3.     Plaintiffs' Joint Motion to Strike GTFM Defendant's Untimely Disclosures, to Present Evidence to the Jury and for Sanctions (Dkt. #485) is **denied**. Plaintiffs seek to strike a supplemental disclosure statement concerning GTFM's lack of insurance coverage in this case. Plaintiffs do not assert that the issue of insurance coverage will be relevant at trial. They instead appear to be asking the Court to prevent GTFM from denying it has insurance coverage. Although insurance coverage may be relevant in a collection effort if Plaintiffs prevail at trial, it is not relevant at this point in the litigation. GTFM asserts that it is fully indemnified by HGI, and that its insurance coverage will again apply if HGI defaults on its indemnification obligation. Given this assertion, made in a formal court filing, and given the lack of relevancy of the insurance issue at trial, the Court can see no prejudice to Plaintiffs from GTFM's supplemental disclosure statement. The Court will also deny Plaintiffs' request to reopen discovery to permit inquiry into insurance issues. That request, made on the eve of the Final Pretrial Conference and some four months after GTFM filed its supplemental disclosure statement, is untimely. Moreover, discovery is not needed because insurance issues will not be presented to the jury. Finally, the Court will deny Plaintiffs' request for sanctions. GTFM explains that the supplemental disclosure statement was filed as a result of a change in the insurance coverage situation in February of 2006, and that it was inadvertently delayed to July of 2006. The Court sees no grounds for imposing sanctions. Plaintiffs seek permission to present evidence to the jury concerning GTFM's change of position on its insurance coverage, but insurance coverage will not be relevant to the jury's consideration of the issues in this case. And for the reasons stated in the preceding paragraph, the Court concludes that

alleged discovery abuses will not be admitted in evidence at trial.

   4.  Plaintiffs' Joint In Limine Motion to Exclude the Chart Evidence of FUBU Defendants and All Testimony Related Thereto (Dkt. #487) is **denied**. Plaintiffs seek to exclude several charts compiled by Defendants for the purpose of illustrating their costs in the sale of various goods. Plaintiffs argue that the charts were not timely disclosed, that they are not admissible under Rule 1006, and that they constitute expert evidence. Defendants respond by arguing that the charts merely summarize evidence otherwise stipulated to be admissible, that the charts have been prepared by Defendants' employees, not expert witnesses, and that the charts are admissible under Rule 1006. Defendants offer to exclude DX 1044, which is an update of information allegedly previously disclosed to Plaintiffs, and to modify the remaining exhibits (DX 1094-1096) to refer directly to documents already stipulated into evidence.[2] The Court will accept this offer; DX 1044 will not be admitted at trial.

   It appears to the Court that DX 1094(a)-1096(a) have been prepared in response to the Court's order on summary judgment. As recounted in a recent order (Dkt. #559), the Court permitted Plaintiffs to use the HGI Letter and Sales Chart (Phipps I) to establish their individual damages in response to Defendants' motions for summary judgment. Although Defendants contend that Phipps I was not disclosed during discovery, a fact not seriously disputed by Plaintiffs, the Court has ruled that Phipps I may be used at trial because its use will be harmless. *Id*. at 7. This ruling was based on the fact that Defendants have been aware of Phipps I since June of this year and have had an adequate opportunity to prepare a response to it. *Id.* Assuming DX 1094(a)-1096(a) constitute Defendants' response to Phipps I (as slightly modified to reflect the withdrawal of DX 1044), the Court will not grant Plaintiffs' motion in limine on non-disclosure grounds. These exhibits are a fair response to the Phipps I,

---

[2]Defendants propose to use DX 1094(a)-1096(a) instead. These apparently are slightly revised versions of DX 1094-1096, which were included in the Proposed Final Pretrial Order. They have been modified to reflect the withdrawal from evidence of DX 1044.

which first came to light during the summary judgment briefing. Plaintiffs may make other evidentiary objections to these exhibits at trial.[3]

5. Plaintiffs' Joint In Limine Motion to Exclude Defendants' Testimony as to Plaintiffs' Contractual Intent (Dkt. #488) is **denied**. Whether any particular item of extrinsic evidence will be relevant to the jury's interpretation of the player contracts, and whether any particular witness providing such evidence has an adequate foundation for doing so, are questions that must be decided at trial.

6. Plaintiffs' Motion in Limine to Exclude Any of Defendant's Evidence of Why Consumers May Have Purchased the HGI/FUBU Apparel (Dkt. #494) is **denied**. The reasons consumers purchased the apparel is relevant to Plaintiffs' claim and damages. Plaintiffs must prove that their injury resulted from Defendants' appropriation of their names and likenesses. 437 F.Supp.2d at 1100. Moreover, "the defendant has the burden of establishing any portion of the sales that is attributable to factors other than the appropriation of the plaintiffs' identity." *Id.* at 1103 (citation and quotation marks omitted). Whether a particular witness has the foundation to provide testimony on the reasons for consumer purchases, and whether such testimony would be admissible lay witness testimony under Rule 701, are questions that can be decided only after the Court hears the foundation and considers the possible testimony. Thus, these issues will be resolved at trial.

7. Plaintiffs' Motion in Limine to Exclude Any Evidence of Whether Certain Items of HGI/FUBU Apparel are "Knock-Offs" (Dkt. #496) is **denied**. Plaintiffs assert that Defendants have never produced documents supporting this contention, but Defendants respond that no such documents exist. Rather, if Plaintiffs seek to introduce specific articles of clothing at trial, Defendants assert that their witnesses will be able to tell, and should be

---

[3]Because DX 1094(a)-1096(a) were disclosed by Defendants after the Proposed Final Pretrial Order was prepared, Plaintiffs will be permitted to assert the objections set forth in Dkt. #557 as though they were contained in the Proposed Final Pretrial Order.

permitted to testify, whether the articles of clothing are authentic. Defendants assert that this will be valid fact testimony by their employees, not expert testimony. Whether such articles of clothing will be admitted at trial, or whether the testimony of defense witnesses regarding authenticity will have adequate foundation and be valid lay opinion testimony under Rule 701, are issues the Court must decide at trial. The Court does not agree with Plaintiffs' suggestion that Defendants should be responsible for damages resulting from counterfeit goods. The Court understands Plaintiffs to be seeking a disgorgement-of-profits damages remedy. Assuming Defendants did not earn profits from the sale of counterfeit goods, such a remedy could not be based on counterfeit sales.

8. Defendants' In Limine Motion to Exclude Evidence Regarding Whether Any of the Plaintiffs' Player Contracts are Executory (Dkt. #497) is **denied**. Defendants argue that contracts are executory if remaining obligations are material, and that the remaining obligations of the player contracts – publicity rights – are not material under the laws of Delaware, Minnesota, Illinois, or California, the state laws governing the various Plaintiffs' contracts. As Defendants note, however, these state laws require the Court to determine whether the publicity provisions induced the parties to enter the contracts (Delaware law), were a primary purpose of the contracts (Minnesota law), were of such importance that the contracts would not have been made without them (Illinois law), and went to the essence of the contracts (California law). Whether the publicity provisions of the contracts rise to this level of importance is a question of fact for the jury. Thus, Defendants' motion, which is in effect an untimely motion for summary judgment, is denied.

9. Plaintiffs' Motion in Limine to Exclude Any Evidence of Criminal Acts or Acts of Domestic Violence (Dkt. #498) is **granted**. Plaintiffs' motion notes that Defendants inquired into misdemeanor convictions and alleged domestic violence instances during the depositions of several Plaintiffs. Plaintiffs note that these instances do not constitute crimes punishable by death or imprisonment in excess of one year under Rule 609(a)(1). In

responding to this motion, Defendants do not address the evidence they seek to introduce. They criticize Plaintiffs for filing an overly broad motion, but never specify what criminal evidence, if any, they intend to introduce at trial. The Court concludes that domestic violence instances do not go to the credibility of Plaintiffs within the meaning of Rule 609(a). Moreover, misdemeanor convictions that do not involve dishonestly or a false statement would not be admissible under Rule 609(a). Plaintiffs' motion accordingly will be **granted**. If Defendants believe that they have evidence of prior criminal acts that would be admissible under the Federal Rules of Evidence, and if they wish to have the Court reconsider the granting of this motion in limine, Defendants shall raise this issue with the Court during trial and outside the hearing of the jury.

10. Defendants' In Limine Motion to Exclude Evidence Relating to the Harlem Globetrotters International Foundation, Inc.'s Corporate or Financial Affairs (Dkt. #499) is **denied**. Defendants argue that the financial affairs of the Foundation are irrelevant because the Foundation has been dismissed from this lawsuit. Plaintiffs counter by arguing that the financial affairs of the foundation will impeach Mannie Jackson's testimony that royalties were given to the Foundation to benefit former Globetrotter players. Plaintiffs contend that the documents will show that Foundation funds were not used to benefit former players, and in fact were used to benefit the Jacksons through contributions to their favorite charities. The Court cannot determine at this stage whether the documents at issue in this motion will be relevant for impeachment purposes. This issue must be resolved at trial. Because the Court might conclude that this evidence is irrelevant, and because the evidence could be prejudicial to Defendants, Plaintiffs are directed not to mention the financial condition of the Foundation or the documents that are the subject of this motion in front of the jury without first raising the issue with the Court.

11. Defendants' In Limine Motion to Exclude Evidence Relating to Whether Plaintiffs' Player Contracts are Assets of Harlem Globetrotters International, Inc. (Dkt. #500)

is **denied**. This motion amounts to an untimely motion for summary judgment. Defendants argue that the only available extrinsic evidence unequivocally shows that HGI purchased Plaintiffs' contracts. Plaintiffs disagree. The Court previously concluded that the relevant provisions of the asset purchase agreement are ambiguous and that the parties' disagreement on this issue created a genuine issue of fact for the jury. 437 F.Supp.2d at 1101. Defendants also argue that Plaintiffs' position is barred by *res judicata*. In making this argument, Defendants appear to rely on an order approving a plan of reorganization in the Bankruptcy Court, but Defendants do not provide the Court with a copy of this order, do not state whether it addressed the player contracts, and do not discuss the other relevant elements of *res judicata*, such as whether the issue was raised and litigated in the Bankruptcy Court. Because Defendants' motion amounts to an untimely motion for summary judgment and, in any event, does not provide sufficient basis for the Court to preclude Plaintiffs from addressing this issue, the motion will be denied.

12. Plaintiffs' Motion in Limine to Exclude Any Evidence of Defendants' Costs or Expenses (Dkt. #501) is **denied**. Plaintiffs argue that Defendants failed to produce expense information during discovery, despite proper discovery requests by Plaintiffs. In response, Defendants note that they produced a number of documents showing cost figures for the products in question. Dkt. #534. Defendants assert that Plaintiffs failed to inquire about these documents during the deposition of defense executives. The Court concludes that cost information was produced by Defendants. Such cost information is relevant to the calculation of damages in this case. *See* 437 F.Supp.2d at 1103. Moreover, although Plaintiffs complain that Defendants failed to respond to discovery requests concerning production costs, Plaintiffs never raised this issue with the Court during the discovery period. The Court has previously noted that Plaintiffs had ample time to conduct discovery and to raise disputed issues with the Court. Dkt. ##143, 148, 559. Plaintiffs cannot use discovery positions that were never challenged as a basis for precluding Defendants from presenting evidence at trial. Finally, the

Court noted above that Defendants shall not use DX 1044 at trial. With a proper foundation under Rule 1006, Defendants may be permitted to use DX 1094(a)-1096(a). The Court will rule on the admissibility of these exhibits at trial.

13. Defendants' In Limine Motion to Exclude Evidence Relating to the Purchase or Ownership of HGI by Shamrock Holdings, Inc. and the Ownership of Shamrock Holdings (Dkt. #502) is **granted in part and denied in part**. Defendants assert that Shamrock's purchase of HGI is irrelevant to any fact at issue in this case. Plaintiffs contend that the purchase price paid by Shamrock was due in part to HGI's ability to use Plaintiffs' personas, that the transactional documents of the Shamrock purchase relate to whether HGI owns the contracts at issue, and that Defendants' failure to disclose the transactions should be disclosed to the jury. For the reasons set forth above, the Court concludes that the failure to disclose the transaction during discovery may not be admitted at trial. Although the Court finds Plaintiffs' arguments regarding the relevancy of the Shamrock transaction to be doubtful, and believes that any marginal relevancy of the transaction would likely be outweighed by the risk of unfair prejudice, the Court will not be able to make this determination until trial. Defendants' motion with respect to the Shamrock transaction is therefore denied. Because of the Court's concerns about the possible prejudicial nature of this evidence, however, Plaintiffs are directed not to mention the Shamrock transaction or Shamrock's ownership interest to the jury without first raising the issue with the Court.

14. Defendants' In Limine Motion to Exclude Evidence Related to Alleged Unconscionability of Plaintiffs' Player Contracts (Dkt. #503) is **denied**. This, too, is an untimely motion for summary judgment. Defendants argue that unconscionability typically is a defense to a specific performance contract, but cite no authority suggesting that unconscionability is not relevant to the consent portion of a claim for invasion of the right of publicity. Defendants further argue that Plaintiffs have delayed in objecting to the unconscionability of the contracts and that Plaintiffs are "highly unlikely" to succeed on an

1  unconscionability claim. Dkt. #503 at 3. These are questions for the jury to decide. Finally, Defendants contend that evidence of unconscionability will be unduly prejudicial. The Court will rule on Rule 403 objections at trial.

15. Defendants' In Limine Motion to Exclude Evidence Relating to Players' Union (Dkt. #504) is **denied**. Defendants argue that the existence of the union is irrelevant because the union no longer currently exists and the collective bargaining agreements it once negotiated are no longer effective. Plaintiffs assert that the collective bargaining agreements and the activities of the union will be relevant extrinsic evidence to the jury's interpretation of the player contracts. The Court cannot determine the relevancy of this evidence until trial.

16. Defendant GTFM, LLC's In Limine Motion to Exclude Punitive Damages Claims (Dkt. #505) is **denied**. This is an untimely motion for summary judgment. The Court notes, however, that Plaintiffs' response primarily relies on Defendants' actions during discovery as evidence of punitive damages. As the Court already has held, Defendants' conduct during discovery will not be admissible at trial.

17. Defendants' In Limine Motion to Exclude Evidence Relating to Plaintiffs' Mental and Emotional Distress (Dkt. #506) is **denied**. Defendants assert that the Court's ruling on summary judgment limited Plaintiffs' damages to disgorgement of Defendants' profits. Although it is true that this was the focus of the Court's order, the parties did not raise, and the Court did not consider, the availability of mental and emotional distress damages. *See* 437 F.Supp.2d at 1103-1107. Defendants cite Restatement (3d) of Unfair Competition § 49, Comment b, in arguing that mental and emotional distress damages are available only in an action for invasion of privacy, not in an action for violation of the right of publicity. The Comment to § 49 is not clear on this issue. Comment b specifically states that "an unauthorized use of a person's identity for purposes of trade can result in compensable injury to personal interests even in the absence of other independently tortious conduct." The Comment further states that celebrities can recover such damages. Section 49 and Comment

b do not make clear that emotional and mental distress damages are unavailable in a claim for violation of the right of publicity, and Defendants cite no case law on this issue. Because Defendants have not adequately demonstrated that mental and emotional distress damages are unavailable in this case, the Court will deny the motion in limine. The Court will rule on this issue when it reviews the parties' proposed jury instructions.

18. Defendants' In Limine Motion to Preclude Plaintiffs from Calling Sandra Abalos and Normal Weisfeld as Witnesses at Trial (Dkt. #507) is **granted in part and denied in part**. The motion is granted to the extent Plaintiffs seek to call Ms. Abalos to testify regarding discovery abuses in this case. As noted above, such alleged discovery abuses will not be admissible at trial. The motion is denied with respect to the possible testimony of Norman Weisfeld. If Mr. Weisfeld is available in Arizona for trial, Plaintiffs may call him to testify if his testimony would be relevant. The Court cannot determine at this stage that his testimony would not be relevant. The Court notes, however, that Plaintiffs do not appear to have power under Rule 45 to compel Mr. Weisfeld to travel to Arizona for trial. If Plaintiffs were interested in securing his testimony, they could have deposed him in New York.

19. Harlem Globetrotters International, Inc.'s, Mannie Jackson's and Catherine Jackson's In Limine Motion to Exclude Punitive Damages Claims (Dkt. #508) is **denied**. This is an untimely motion for summary judgment. The Court notes, as it has above, that Plaintiffs will not be permitted to introduce evidence of alleged discovery abuses in support of their punitive damages claim.

20. Defendants' In Limine Motion to Exclude Evidence and Witnesses Disclosed After the Discovery Deadline and Motion for Sanctions (Dkt. #509) is **denied**. Defendants assert that a large number of exhibits and witnesses were disclosed after the close of discovery on September 30, 2005, and that the late disclosure is not substantially justified or harmless within the meaning of Rule 37(c)(1). But Defendants do not discuss the individual exhibits or witnesses. The Court therefore cannot make a determination as to whether the late

disclosure of any of these exhibits or witnesses is substantially justified or harmless. The Court will rule on these issues during trial.

To assist the Court in making such rulings, Defendants shall prepare a notebook containing each of Plaintiffs' disclosure statements and responses to written discovery. The notebook shall contain an index listing the statement or discovery response, the date on which it was received, and the tab number in the notebook where it is located. When a witness or exhibit is proposed during trial and Defendants believe it was not timely disclosed, Defendants shall be prepared to identify the location in the notebook where the witness or exhibit was first disclosed. If the witness or exhibit was disclosed after September 30, 2005, the Court will consider whether the late disclosure was substantially justified or harmless. To assist the Court in making this determination, Plaintiffs shall revise the chart attached as Exhibit A to Dkt. #539 to clearly identify the date on which the disclosure was made. If the Court cannot conclude that the delayed disclosure was substantially justified or harmless, the witness or exhibit will not be admitted in evidence.

The parties are advised that substantial justification likely will not be found to exist with respect to any witness or exhibit that reasonably could have been identified as relevant before September 30, 2005. The parties are further advised that the late disclosure of a witness or exhibit will not be deemed harmless if the Court concludes that Defendants would have deposed the witness or taken other action with respect to the exhibit during the discovery period had the witness or exhibit been timely disclosed. Because the Court is not able to rule on these issues at this time, Plaintiffs should not mention witnesses and exhibits identified in Defendants' motion (Dkt. #509) to the jury before the Court has ruled on these matters.

21. Defendants' In Limine Motion to Exclude Evidence Relating to the Philippines, Thailand, FUBU the Collection, LLC, and GTFM of Orlando, LLC d/b/a FUBU Company Store (Dkt. #510) is **denied**. Defendants argue that evidence of sales in the Philippines and Thailand and evidence related to FTC, LLC and GTFM of Orlando is irrelevant. Plaintiffs

disagree, arguing that foreign sales are relevant to Defendants' credibility and the question of whether Defendants appropriated Plaintiffs' names or likenesses for advantage. The Court cannot determine at this stage whether the evidence will or will not be relevant. This ruling must be made at trial.

22. Defendants' In Limine Motion to Exclude Evidence and Witnesses Violating the Court's July 26, 2006 Order (Dkt. #511) is **granted in part and denied in part**. On July 26, 2006, the Court entered an Order Resetting Final Pretrial Conference Deadlines. Dkt. #436. The order required the parties to exchange drafts of the Proposed Final Pretrial Order no later than November 1, 2006. *Id.* ¶ 5. The order also required the parties to meet in person on or before November 1, 2006 and exchange marked copies of all exhibits, expressly stating that "any exhibit not marked and exchanged at this meeting shall be precluded at trial." *Id.* ¶ 6. Notwithstanding this clear order and the more than three months Plaintiffs had to comply with it, Plaintiffs did not disclose all of their exhibits by November 1, 2006. Defendants assert, and Plaintiffs do not disagree, that Exhibits 379-398 were not disclosed by November 1, 2006. On the basis of the Court's clear order (Dkt. #436 ¶ 6(b)), these exhibits shall be precluded at trial.

Defendants' motion also identifies a number of witnesses who were not identified on November 1, 2006. Plaintiffs assert that this non-disclosure was an unintentional omission, but admit in Exhibit C to their response (Dkt. #541) that several of these witnesses had never before been disclosed by Plaintiffs. These include Joan Haynes, Custodian of Records Supreme Court of New York, Custodian of Records Eastern District of Arkansas, Kitty Hall, and Ed Garvey. Because these witnesses were not previously known to Defendants, and were not disclosed by the Court's clear deadline of November 1, 2006, they will be precluded from trial. The Court's Order Setting Final Pretrial Conference expressly stated that "[f]ull and complete compliance with this Order shall be required by the Court." Dkt. #436 ¶ 12. With respect to the remaining witnesses who were not disclosed by the November 1, 2006 deadline,

the Court will not preclude them at this time. As noted above, the Court will consider whether the delay in disclosing these witnesses was substantially justified or harmless. If it was, the Court will permit them to testify notwithstanding the fact that they were not included in the list submitted to Defendants on November 1, 2006. These individuals previously had been identified by Plaintiffs and therefore were known to Defendants as possible witnesses before November 1, 2006.

23. Defendants' In Limine Motion to Exclude Evidence of Styles That Only Contain Plaintiffs' Alleged Jersey Numbers, Alleged Caricatures, the "Legends" Emblem and/or the "Legends" Hangtags (Dkt. #512) is **denied**. Defendants argue that consumers would not have identified player numbers, player caricatures, the "Legends" emblem, or "Legends" hangtags with the Plaintiffs. As Plaintiffs note, however, Defendants themselves chose to include these depictions on the clothing in question. Whether or not these depictions would be related to Plaintiffs is a question for the jury to decide.

24. Defendants' In Limine Motion to Exclude Evidence Relating to Shoes (Dkt. #513) is **granted**. Plaintiffs admit that the shoes in question, and the contract relating to them, did not involve the use of Plaintiffs' identities. Given this admission, the shoes and related documents are not evidence of Defendants' alleged appropriation of Plaintiffs' personas. The motion will therefore be granted. If Plaintiffs believe during trial that the shoes or related contracts become relevant in some way to the issues in the case, they may ask the Court, outside the hearing of the jury, to reconsider this ruling.

25. Plaintiffs' Joint Motion for Pre-Admission of Exhibits and Evidence and Notice of Intent to Use Summary of Voluminous Evidence Pursuant to Federal Rule of Evidence 1006 (Dkt. #474) is **denied**. The Court has already ruled that Plaintiffs may not use Phipps II and Phipps III at trial. Dkt. #559. To the extent Plaintiffs' motion seeks pre-admission of other evidence, it is denied. The Court will address the admissibility of evidence at trial.

1      DATED this 6th day of December, 2006.

*[signature]*
David G. Campbell
United States District Judge